HAROLD FRIEDLAND and ELAINE FRIEDLAND, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; ROBERT S. POLLAK and JOYCE W. POLLAK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Friedland v. Commissioner
Docket Nos. 18304-80, 21703-80.
United States Tax Court
T.C. Memo 1982-549; 1982 Tax Ct. Memo LEXIS 199; 44 T.C.M. (CCH) 1192; T.C.M. (RIA) 82549; September 22, 1982. Marvin Katz and Michael S. Gilinsky, for the petitioners in docket No. 18304-80. Robert M. broder, for the petitioners in docket No. 21703-80. Russell K. Stewart, for the respondent. FORRESTER
MEMORANDUM FINDINGS OF FACT AND OPINION FORRESTER, Judge: Respondent has determined a deficiency of $20,439 in petitioners Harold and Elaine Friedland's income tax for the calendar year 1974, and a deficiency of $16,479 in petitioners *200 Robert and Joyce Pollak's income tax for that same year. Due to a concession by the Friedlands, $17,705 remains in dispute in docket No. 18304-80. At issue is whether payments Harold Friedland made to Joyce Pollak during 1974 were alimony payments under section 71(a)(2). [1]
FINDINGS OF FACT Some of the facts have been stipulated and are so found. At the time the petitions in these cases were filed, Harold Friedland (hereafter Harold) and Elaine Friedland, husband and wife, resided in Rydal, Pennsylvania, and Robert S. Pollak and Joyce W. Pollak (hereafter Joyce) resided in Pottstown, Pennsylvania. Both sets of petitioners timely filed their joint Federal income tax returns for the year in issue. [2]
Harold and Joyce, who had married in 1950, were divorced on December 4, 1974. *201 They entered into a written separation agreement on May 20, 1974 (hereafter the agreement), and it is payments made subsequent to the agreement and prior to the divorce decree that are at issue in these cases. The relevant parts of the agreement are set out below: WHEREAS, it is the desire of the parties, after long and careful consideration, to adjust amicably, compromise and settle all property rights and all rights in, to or against each other's property or estate, including property heretofore or subsequently acquired by either party, and to settle all disputes existing between them, including, without limitation by specification, any and all claims for wife's maintenance and support and/or for alimony, counsel fees and costs. FIRST: * * * It is warranted, covenanted and represented by each party to the other that this Agreement is lawful and enforceable and this warranty, covenant and representation is made for the specific purpose of inducing each of the parties to execute the Agreement. The parties knowingly and understandingly waive any and all possible claims that this Agreement is for any claim of illegality or any reason whatsoever of public policy unenforceable *202 in whole or in part. The parties do hereby warrant, covenant and agree that, in any possible event, they are and shall forever be estopped from asserting any illegality or unenforceability as to all or any part of this Agreement. SIXTH: * * * (c) SUPPORT OF WIFE UNTIL ENTRY OF A FINAL DECREE IN DIVORCE, IF ANY. Husband hereby covenants and agrees that until the Distribution Date as defined in Paragraph THIRTEENTH of this Agreement, he will continue to support Wife as heretofore. Wife agrees however, that during this period she will not incur extraordinary or unusual debts or expenses. Husband shall properly and adequately maintain and care for the real estate of the parties referred to herein. It is understood and agreed that all of such bills and obligations shall be paid by Husband within a reasonable period of time, so as not to impair Wife's credit or to embarrass her. Husband covenants and agrees to keep Wife indemnified and saved harmless from all such bills, debts and liabilities and from all actions, claims and demands whatsoever with respect thereto and from all costs, expenses and counsel fees whatsoever appertaining to such actions, claims or demands. FIFTEENTH: *203 * * * In the event either party to this Agreement dies before the Distribution Date, this Agreement shall nevertheless continue to be fully enforceable as to and on behalf of and against the estate of the decedent and the day following such death shall be deemed the Distribution Date. From January 1970 to December 1973, Harold made regular payments to Joyce. These payments totaled $47,932.73 in 1970, $49,208.13 in 1971, $52,906.85 in 1972, and $24,315 in 1973. Harold made payments of $3,500 per month during these years, [3] and also paid miscellaneous smaller sums to cover various expenses. Following the 1974 separation agreement, Harold made seven monthly payments of $3,500 to Joyce, made miscellaneous payments totaling $2,215, and paid house expenses of $3,686, one-half of which were for Joyce's benefit, for a total amount paid to or for the benefit of Joyce in 1974 of $28,558. OPINION Section 71(a) (2) provides that a wife separated from her husband and receiving periodic payments made under a written *204 separation agreement, and because of the marital or family relationship, must include such payments in her gross income. Conversely, a husband making payments that qualify under section 71(a) (2) may deduct such payments. Sec. 215(a). Petitioner Joyce argues that paragraph SIXTH (c) of the agreement is not a written separation agreement within the meaning of section 71(a) (2), because it does not provide for the payment to her of specific sums. Petitioner Harold and respondent take the position that the lack of specificity in paragraph SIXTH (c) of the agreement does not prevent that part of the agreement from qualifying as a written separation agreement under section 71(a) (2). In Jacklin v. Commissioner, 79 T.C.     (Aug. 17, 1982), we held that a separation agreement need not specify a dollar amount of support in order to qualify as a written separation agreement under section 71(a) (2). As stated by Whitaker, J., concurring: "[t]he omission of a fixed amount of support is immaterial since there is in the written separation agreement an obligation referable to the existing standard of living of the wife, which fact is capable of independent proof." Following *205 Jacklin v. Commissioner,supra, we hold that the lack of specificity in paragraph SIXTH (c) of the agreement does not without more prevent the agreement from qualifying as a written separation agreement under section 71(a) (2). See also Jefferson v. Commissioner,13 T.C. 1092 (1949). We must next determine whether Harold's payments to Joyce otherwise qualify as alimony under section 71(a) (2). In Jacklin v. Commissioner,supra at    , we noted that-- [a]bsent a statement of a definite dollar amount or some formula for determining the amount properly payable under paragraph 5 of the agreement in this case, petitioners face a difficult task of proving that the payments in question qualify under section 71(a) (2). We thus must scrutinize the record with some care to determine whether the payments here in issue qualify under section 71(a) (2). To meet the requirements of section 71(a) (2), payments must be "periodic," made "because of the marital or family relationship," and "made under such agreement." Section 71 does not define "periodic payments" directly, but it and the regulations thereunder do provide a negative definition by *206 specifying certain payments that are not periodic. Installment payments discharging an obligation, the principal sum of which is specified in an agreement, are not periodic; neither are payments under an agreement to be paid over a period ending 10 years or less from the date of such agreement, unless such payments are subject to any of the contingencies of death of either spouse, remarriage of the wife, or change in the economic conditions of either spouse. Sec. 71(c) (1) and (2), sec. 1.71-1(d) (3), Income Tax Regs.
Paragraph SIXTH (c) of the agreement does not specify a principal sum to be paid by Harold to Joyce, and paragraph FIFTEENTH provides that payments under SIXTH (c) shall cease upon the death of either spouse. Any payments made pursuant to paragraph SIXTH (c) thus qualify as "periodic." Paragraph SIXTH (c) states that the payments it specifies are for the support of Joyce until such time as a final divorce decree is entered. On this record, we will not go behind the face of the agreement, and we find that any payments made pursuant to paragraph SIXTH (c) were made "because of the marital or family relationship." Joyce argues on brief that Harold's 1974 payments *207 to her and on her behalf were not made under the agreement. In support of this position, Joyce contends that the payments made to her in 1974 and prior thereto may have been in repayment of a loan, or pursuant to a business arrangement between the parties. She offered no evidence in support of this contention. Paragraph SIXTH (c) provided that Harold would continue to support Joyce "as heretofore." Harold testified that the payments he made to and on behalf of Joyce in 1974 were for Joyce's support, and that these payments carried on the general pattern of the payments he had made to Joyce prior to the agreement; the record supports his testimony. We find that Harold's payments to Joyce in 1974 were made under the agreement. Based on the foregoing, the payments made in 1974 by Harold to Joyce qualify as alimony payments under section 71(a) (2) and are includable in Joyce's income; conversely, Harold may deduct such payments pursuant to section 215. As a result of concessions made by petitioners, Decision will be entered under Rule 155 in docket No. 18304-80.
Decision will be entered for the respondent in docket No. 21703-80.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, unless otherwise specified.↩
2. Elaine Friedland and Robert Pollak are parties only because they filed joint returns with their respective spouses for the year in issue, and consequently Harold Friedland and Joyce Pollak will be referred to as petitioners hereafter.↩
3. These payments were not made from June through September, or in November and December of 1973. The record discloses no reason for this interruption of payments.↩